**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America, | Criminal No. 12-225 (DWF) |
| Plaintiff, | **MEMORANDUM** |
| v. | **OPINION AND ORDER** |
| Jermaine Aquarius Edison, | |
| Defendant. | |

Andrew H. Mohring, Office of the Federal Defender, counsel for Defendant.

Andrew S. Dunne and Jeffrey S. Paulsen, Assistant United States Attorneys, United States Attorney's Office, counsel for the Government.

# INTRODUCTION

This matter is before the Court on Defendant Jermaine Aquarius Edison's ("Edison") motion for release in light of the COVID-19 pandemic.[1] (Doc. No. 169 ("Motion").) The United States of America (the "Government") opposes Edison's Motion. (Doc. Nos. 164, 174.) The Court is also in receipt of letters from Edison's

---

[1] On May 11, 2015, Edison sent a *pro se* letter to the Court requesting immediate release. (Doc. No. 155 ("Request").) The Government opposed his Request on May 26, 2020. (Doc. No. 164.) Edison was appointed counsel on June 9, 2020. (Doc. Nos. 166, 167.) On June 19, 2020, Edison's attorney filed a motion pursuant to 18 U.S.C. § 3582(c)(1)(A) and supporting memorandum seeking compassionate release in light of the COVID-19 pandemic. (Motion; Doc. No. 170 ("Def. Memo.").) The Government filed a renewed opposition to the supplemental briefing on June 22, 2020. (Doc. No. 174) Edison filed a reply on July 8, 2020. (Doc. No. 177 ("Reply").)

fiancé and mother affirming his request for release.[2] (Doc. Nos. 162, 163 (collectively, "Letters").) For the reasons discussed below, the Court respectfully denies Edison's Motion.

## BACKGROUND

On September 11, 2012, a grand jury in the District of Minnesota returned a 7-count Indictment charging Edison, and one other co-defendant, with federal drug trafficking offenses involving cocaine, cocaine base, and methylenedioxypyrovalerone (MDPV or "Ecstasy"). (Doc. No. 7.) On December 18, 2012, Edison appeared before this Court and pled guilty to Count 1 of the Indictment charging him with conspiracy to distribute 500 grams or more of cocaine, 28 grams or more of cocaine base ("crack"), and a quantity of MDPV or "Ecstasy," in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. (Doc. No. 60.)

On August 27, 2013, the Court sentenced Edison to 176 months' imprisonment followed by an eight-year term of supervised release.[3] (*See* Doc. Nos. 91-92.) Edison appealed his sentence to the United States Court of Appeals for the Eighth Circuit. (Doc. No. 93.) Edison argued that his sentence was unreasonable and greater than necessary to

---

[2]   Each of the letters asserts that Edison has an increased risk of contracting COVID-19 because he suffers from high blood pressure. (Doc. Nos. 162, 163.)

[3]   Defendant's applicable guideline range of imprisonment was 235-293 months based on his status as a career offender; therefore, the 176-month sentence represented a significant downward departure stemming from motions from both the Government and Edison that a reduction was warranted. (*See* Doc. No. 100.)

achieve the statutory goals of sentencing.  The Eighth Circuit affirmed the sentence imposed by the Court.  *See United States v. Edison*, 756 F.3d 638 (8th Cir.), *cert. denied*, 574 U.S. 967 (2014).  (Doc. Nos. 102-103).  Edison is now incarcerated at FCI Fort Dix in New Jersey.  BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed July 8, 2020).  According to the Bureau of Prisons ("BOP"), Edison's release date is March 29, 2025.  *Id*.

On or about April 6, 2015, Edison submitted the a *pro se* motion seeking a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(2).  (Doc. No. 109).  Edison's *pro se* motion was based upon Amendment 782 to the Sentencing Guidelines which revised the Drug Quantity Table under U.S.S.G. § 2D1.1 across drug and chemical types and reduced drug quantity base offense levels by two levels, thereby lowering the advisory guidelines for certain drug offenses.  The Court found that Amendment 782 did not lower the sentencing range established for a career offender and therefore denied Edison's motion.

On or about April 8, 2020, Edison filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  (Doc. No. 152.)  On May 14, 2020, the Court denied Edison's § 2255 motion as time-barred and duplicative of issues already adjudicated on direct appeal.  (Doc. No. 156.)

Edison now moves for release pursuant to 18 U.S.C. § 3582(c) on the grounds that he "suffers from serious, diagnosed health conditions, including hypertension, obesity, and a history of hyperlipidemia" that "make him particularly vulnerable to complications of COVID-19, exposing him to a high and elevated risk of severe illness or death should

3

he contract the virus."[4] (Def. Memo. at 2; *see also* Doc. Nos. 174-1; 174-2; 174-3; 174-4; 174-5 (collectively, "Medical Records"); Reply at 2-4.) Edison argues further that "what began with scattered infections at a few BOP facilities has grown exponentially," and that "complying with the recommended physical and social distancing practices is simply not possible in prison environments." (Def. Memo. at 6.) While Edison acknowledges that just 14 inmates are currently positive for COVID-19, he contends that "any confidence that the spread of the virus at this or any prison facility will be contained would be misplaced."[5] (*Id.* at 11.)

## DISCUSSION

Under 18 U.S.C. § 3582(c)(1)(A)(i), a Court may reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A).

---

[4] Edison's Medical Records reflect that his most recent blood pressure reading was 124/80, his body mass index ("BMI") was 35.4, and his hyperlipidemia was resolved. (Medical Records.) Edison states that he takes 3 different blood pressure medications. (Def. Memo. at 3 (citing Doc. No. 6 ¶ 69).)

[5] Edison asserts that despite the efforts the BOP has taken to mitigate the spread of the virus, "the harsh reality is, COVID-19 has taken root in a large and growing number of its facilities." (Def. Memo. at 13.) Edison also contends that FCI Fort Dix is particularly vulnerable to an outbreak because it houses 2,780 prisoners in close proximity, including 12-person pods. (*Id.*)

The Sentencing Commission's policy statement addressing reduction of sentences under § 3582(c)(1)(A) asserts in relevant part that a court may reduce a defendant's term of imprisonment after considering § 3553(a) factors if it finds that: (1) "extraordinary and compelling reasons warrant the reduction," (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (3) "the reduction is consistent with this policy statement."[6] USSG § 1B1.13 ("Statement"). The Statement includes an application note that defines "extraordinary and compelling reasons" as (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories.[7] *Id.*

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on

---

[6] While the policy statement refers only to motions filed by the BOP Director, the Court construes the statutory command pursuant to § 3582(c)(1)(A)(ii) that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission" to mean that the Statement also applies to motions filed by defendants.

[7] The Statement cites examples of qualifying medical conditions including metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-stage organ disease, and advanced dementia. (Statement.)

the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[8] *Id.*

The record reflects that Edison requested compassionate release from the warden at FCI Fort Dix sometime before May 28, 2020.[9]  (Doc. No. 165.)  More than 30 days have now lapsed since he submitted a request to his warden.  Accordingly, the Court finds that Edison's Motion is properly before the Court.

After a careful review of Edison's Motion, supporting memoranda, Medical Records, supplemental documentation, and Letters, the Court finds that Edison's circumstances do not meet the demanding standard for compassionate release.  Specifically, the Court finds that Edison's medical conditions are insufficiently extraordinary or compelling to warrant immediate release.

According to his most recent BOP blood pressure reading on February 14, 2020, Edison's blood pressure was 124/80.  (Doc. No. 174-1.)  The Centers for Disease Control and Prevention ("CDC") provides that a person does not typically suffer from

---

[8]   While judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A).  *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

[9]   The exact date Edison requested compassionate release is unknown; however, Edison has properly verified that he submitted his request to his warden no later than May 28, 2020, and likely some time before.  (Doc. No. 165.)

hypertension unless their blood pressure is consistently 130/80 mm HG or higher.[10] *See* CDC, High Blood Pressure Symptoms and Causes, https://www.cdc.gov/bloodpressure/about.htm (last accessed July 8, 2020)  While Edison's Medical Records reflect that his blood pressure measured 148/88 on November 18, 2019, the medical report also states that the reading was likely high due to Edison not having taken his blood pressure medication that day.  (Doc. No. 174-2.)  Other blood pressure readings reflected in Edison's Medical Records include 127/89 on August 29, 2019, and 135/85 on August 7, 2019.  (Doc. Nos. 174-3; 174-4.)  The Court recognizes that Edison's blood pressure fluctuates, and that at times, it hovers on hypertensive.  Notwithstanding, it appears that it is sufficiently controlled with blood pressure medication and is currently below even the lowest threshold for a hypertension diagnosis.  Edison's Medical Records also reflect that his hyperlipidemia is resolved.  (Doc. No. 174-5.)

The Court also recognizes that Edison's most recent BMI measurement of 35.4 places him at increased risk of severe illness from COVID-19 if he contracts it.[11]

---

[10]    The CDC asserts that some practitioners do not diagnose hypertension unless a person's blood pressure is consistently 140/90 mm HG or higher.  Even applying the lower standard of 130/80, the Court finds that Edison's current blood pressure is below the threshold.

[11]    According to the CDC, a person with a BMI of 30 or higher is at increased risk for severe illness from COVID-19.  *See* CDC, People of Any Age with Underlying Medical Conditions *revised* June 25, 2020, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2

Notwithstanding, the Court finds that Edison's level of obesity on its own fails to meet the demanding standard for compassionate release.[12]

While Edison also expresses concern with respect to increased risk of contracting COVID-19 in a prison setting, and particularly at FCI Fort Dix where he contends that complying with the recommended physical and social distancing practices is not possible, the Court notes that only 14 of 2,780 inmates at FCI Fort Dix are currently positive for COVID-19, 25 inmates and 5 staff persons have recovered, and no persons have died.[13] The Court understands Edison's concerns that the virus will spread; however, this Court agrees with others that have found a generalized fear that an outbreak will occur at a particular facility is insufficient to clear the high standard necessary for compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); *see also United*

---

F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed June 26, 2020); *see also* Doc. No. 174-2.)

[12] The Court recognizes that obesity is a serious health condition, and that inmates have limited control over their diet in prison. Notwithstanding, the Court finds that a BMI of 35.4 fails to satisfy the demanding standard of an "extraordinary and compelling" medical condition that warrants immediate release, even in light of the COVID-19 pandemic. As discussed below, the Court finds that FCI Fort Dix is taking appropriate steps to mitigate the spread of the virus. Accordingly, the Court finds no indication that Edison's health is compromised such that he has or will have a diminished ability to provide self-care in prison.

[13]     *See* Federal Burau of Prisons, COVID-19 Cases, https://www.bop.gov/coronavirus/index.jsp (last accessed July 8, 2020).

*States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A)."). Moreover, the Court finds that the BOP is doing everything within its control to mitigate the spread of the virus.[14]

In short, while the Court understands the gravity of the COVID-19 pandemic and recognizes Edison's concerns, the Court finds that the circumstances do not present an extraordinary and compelling reason to warrant release. Accordingly, the Court respectfully denies Edison's Motion.[15]

---

[14] Effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of the COVID-19" and "to ensure the continued effective operation of the federal prison system." *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp (last accessed July 8, 2020). Those steps include a limiting visits and internal movement, increased hygiene measures, and screening of both staff and inmates. (*Id.*) Current measures also include a 14-day isolation period, and limited group gatherings. *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan Phase V, https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (last accessed July 8, 2020).

[15] Because Edison fails to present a "extraordinary and compelling" reason to warrant release, the Court need not consider the § 3553(a) factors or whether he poses danger to the safety of any other person or to the community. *See* 18 U.S.C. § 3582(c)(1)(A); Statement.

## CONCLUSION

For the reasons set forth above, the Court finds that Edison is ineligible for compassionate release because he does not present an extraordinary and compelling reason to warrant release.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Jermaine Aquarius Edison's Motion for Release (Doc. Nos. [155], [169]) is respectfully **DENIED**.

Date:  July 9, 2020                                         s/Donovan W. Frank
                                                            DONOVAN W. FRANK
                                                            United States District Judge